FORT BROWN VILLAS III CONDOMINIUM ASSOCIATION, INC. d/b/a Fort Brown Condoshares and LRI Management, Inc., Petitioners,

v.

Coy GILLENWATER, Respondent.

No. 07–1028.

Supreme Court of Texas.

April 17, 2009.

Rehearing Denied June 19, 2009.

Don W. Kothmann, Ann S. Taylor, Knolle Holcomb Kothmann & Callahan, P.C., Austin, TX, for Petitioner.

Andrew B. Sommerman, Heather Lynn Long, Sommerman & Quesada, LLP, Dallas, TX, for Respondent.

PER CURIAM.

In this premises liability case, we decide whether Texas Rule of Civil Procedure 193.6, which provides for the exclusion of evidence due to an untimely response to a discovery request, applies in a summary judgment proceeding. We hold that it does and, therefore, reverse the court of appeals' judgment.

In April 2004, Coy Gillenwater and his wife rented a condominium at the Fort Brown Condoshares in Brownsville. While visiting the condominium swimming pool, Gillenwater attempted to sit down in a pool-side chair. As he lowered himself into the chair, the tip of Gillenwater's right ring finger was severed by what Gillenwater alleged to be a broken weld on the chair's frame. Gillenwater filed a premises liability claim against Fort Brown. The parties entered into, and the trial court approved, an "Agreed Level III Scheduling Order," which set August 19, 2005, as the deadline for expert disclosure. *See*

Tex.R. Civ. P. 190.4(a) (permitting the trial court to establish a "discovery control plan tailored to the circumstances of the specific suit"). The order contained all the requirements of a level three discovery plan. *See id.* Fort Brown subsequently agreed to two extensions of the expert disclosure deadline, to August 25, 2005, and September 22, 2005, respectively. Gillenwater failed to disclose an expert by any of these deadlines. On February 10, 2006, Fort Brown filed a no-evidence motion for summary judgment, alleging that Gillenwater presented no evidence that (1) the condition of the chair posed an unreasonable risk of harm; and (2) Fort Brown knew or reasonably should have known of any danger presented by the chair. Gillenwater's response to this no-evidence motion included an affidavit of a previously undisclosed expert, Paul Carper, P.E. Fort Brown objected to the affidavit filed with the response, arguing that (1) the expert was not timely disclosed under the scheduling order; and (2) regardless of the scheduling order's application, the expert's affidavit was conclusory. In response, Gillenwater argued that Carper's affidavit was competent summary judgment evidence, that Texas Rule of Civil Procedure 193.6 did not apply in a summary judgment setting, and that even if it did, Fort Brown was not unfairly surprised or prejudiced by the affidavit. The trial court sustained the objections, excluded the expert's affidavit, and granted Fort Brown's no-evidence motion for summary judgment. The court of appeals reversed, holding that the trial court abused its discretion in striking the expert's affidavit because Rule 193.6 does not apply in a summary judgment proceeding. 286 S.W.3d 35, 2007 WL 3227685. The court also held that the expert's affidavit was not conclusory and that it was sufficient evidence to preclude summary judgment. *Id.* at 39.

▮ Under Rule 193.6, discovery that is not timely disclosed and witnesses that are not timely identified are inadmissible as evidence. Tex.R. Civ. P. 193.6(a). A party who fails to timely designate an expert has the burden of establishing good cause or a lack of unfair surprise or prejudice before the trial court may admit the evidence. Tex.R. Civ. P. 193.6(b). "A trial court's exclusion of an expert who has not been properly designated can be overturned only upon a finding of abuse of discretion." *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994) (citing *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex. 1986)). Before the no-evidence motion for summary judgment was introduced to Texas trial practice, courts did not apply evidentiary sanctions and exclusions for failure to timely designate an expert witness in a summary judgment proceeding. *See, e.g., State v. Roberts,* 882 S.W.2d 512, 514 (Tex.App.-Austin 1994, no writ) ("Discovery rules and sanctions for failure to designate expert witnesses do not apply to summary judgment proceedings."); *see also Purvis Oil Corp. v. Hillin,* 890 S.W.2d 931, 939–40 (Tex.App.-El Paso 1994, no writ); *Gandara v. Novasad,* 752 S.W.2d 740, 743 (Tex.App.-Corpus Christi 1988, no writ). However, in 1997, the no-evidence summary judgment motion was introduced to the Texas Rules of Civil Procedure as Rule 166a(i),[1] and in 1999, pretrial discovery rules were amended to include evidentiary exclusions under Rule 193.6. *Id.* at § 193.6.[2] Since that time, most courts of appeals have applied Rule 193.6 to summary judgment proceedings. *See Thompson v. King,* 2007 WL 1064078, *2 (Tex. App.-Tyler Apr. 11, 2007, pet denied) (mem.op.); *Blake v. Dorado,* 211 S.W.3d

---

1. Tex R. Civ. P. 166a (1949, amended 1997).

2. Tex R. Civ. P. 193.6 (1998).

429, 432 (Tex.App.-El Paso 2006, no pet.); *Chau v. Riddle*, 212 S.W.3d 699, 704–05 (Tex. App.-Houston [1st Dist.] 2006), *rev'd on other grounds*, 254 S.W.3d 453, 455 (Tex.2008); *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 12–13 (Tex.App.-Austin 2006, no pet.); *F.W. Indus., Inc. v. McKeehan*, 198 S.W.3d 217, 221 (Tex.App.-Eastland 2005, no pet.); *Villegas v. Tex. Dep't. of Transp.*, 120 S.W.3d 26, 34–35 (Tex.App.-San Antonio 2003, pet. denied); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex.App.-Austin 2002, pet. denied). *But see Alaniz v. Hoyt*, 105 S.W.3d 330, 340 (Tex.App.-Corpus Christi 2003, no pet.); *Johnson v. Fuselier*, 83 S.W.3d 892, 897–98 (Tex.App.-Texarkana 2002, no pet.) (both declining to apply Rule 193.6 to a summary judgment proceeding). Because we have already held that evidentiary rules apply equally in trial and summary judgment proceedings, *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1995), we also hold that the evidentiary exclusion under Rule 193.6 applies equally.

Our conclusion is based on the changes made to the pretrial discovery rules and the introduction of the no-evidence motion for summary judgment. The former pretrial discovery rules established a fluid deadline for discovery disclosure, which could be modified based on a change in the date of trial. *Ersek*, 69 S.W.3d at 272. Thus, it was possible that an exclusionary rule based on an untimely disclosure used at the summary judgment stage could exclude evidence that would later be admissible at trial. *Id.* at 272–73. However, the new discovery rules establish a date certain for the completion of discovery, which depends on the discovery plan level and not on the trial date. *See id.* at 273; *see*

*also* Tex.R. Civ. P. 190.2–.4 (providing specific time periods for the end of discovery, depending on the discovery plan level). Under the new rules, there is no longer a concern that discovery will be incomplete at the summary judgment stage. *See Ersek*, 69 S.W.3d at 273–74. In fact, the no-evidence rule, by its very language, is to be used following discovery. Tex.R. Civ. P. 166a(i) ("*After adequate time for discovery*, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence ....") (emphasis added). Combined with the no-evidence motion for summary judgment rule, the "hard deadline" established by the pretrial discovery rules ensures that the evidence presented at the summary judgment stage and at the trial stage remains the same. *See id.*; Tex.R. Civ. P. 190.3. Accordingly, the 193.6 exclusionary rule applies equally to both proceedings.

Here, Gillenwater did not timely disclose his expert pursuant to the deadline provided for in the agreed scheduling order and subsequent extension agreements. The trial court struck the expert's affidavit and did not consider it in granting the summary judgment. 286 S.W.3d at 38. Because Rule 193.6 provides for the exclusion of an untimely expert affidavit, we hold that the trial court did not abuse its discretion in striking it.[3] We also hold that Gillenwater failed to satisfy his burden of establishing good cause or a lack of unfair surprise or prejudice against Fort Brown. *See* Tex.R. Civ. P. 193.6(b). Gillenwater did not designate its expert until three days before the end of discovery and more than five months after the expert designation deadline.

---

**3.** Because the expert's affidavit is inadmissible on this point, we need not consider whether the affidavit was conclusory.

■ Having held that the expert's affidavit was properly excluded, we must review the remaining evidence to determine whether the trial court appropriately granted Fort Brown's motion for summary judgment. As an invitee, Gillenwater must prove, under his premises liability claim, that (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992). Fort Brown argues there is no evidence that Fort Brown had actual or constructive knowledge of the chair's condition. We agree. Other than expert evidence, Gillenwater offers the following evidence in support of the knowledge element:

- Gillenwater's unchallenged explanation of the how the occurrence happened (by lowering himself into the chair while grabbing the sides). Gillenwater argues this allows an inference that the chair was already broken.
- Photographs of the chair taken by an insurance adjuster after the injury.
- A deposition from Frank Collins, the condominium manager, testifying that:
  ▸ It was the condominium's responsibility to maintain the outdoor lawn equipment in a safe condition;
  ▸ Collins first became aware of the injury the day after the incident;
  ▸ Collins has an associate's degree in welding;
  ▸ Collins knew the combination of chlorine and salt water in the air had a corrosive effect on metal chairs by the pool; and
  ▸ Collins had an employee inspect, wash, and clean all the outdoor lounge chairs by the pool (including the chair at issue) six days a week.
- Collins and Gillenwater inspected the chair the day after the injury. The broken weld was visible to both men and was on the same side of the chair where Gillenwater had placed his hand. After the incident, Collins inspected the other chairs by the pool and found "hairline cracks" in those chairs, which he subsequently repaired or replaced.

Gillenwater argues that this evidence proves the broken welds were easily visible to the naked eye prior to the accident. We disagree. Instead, it only establishes that the chairs were inspected regularly because of the awareness of possible corrosion, that Gillenwater was injured, and that Collins first became aware of the injury and the chair's condition the day after the injury occurred. This evidence has no bearing on whether broken welds was visible prior to the injury. Gillenwater also argues it is reasonable to infer the dangerous condition was present and seen by employees when the chairs were washed because "common sense dictates that the hairline cracks and broken rungs visible on the chair at issue and the other chairs surrounding the pool did not occur over night." But this conclusion is precluded by our holding in *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97 (Tex.2000). In *CMH Homes*, Daenen was injured when he stepped off a truck onto an unstable loading platform, while carrying a heavy load. *Id.* at 98. Evidence showed that CMH had previously replaced the platform and steps a number of times after discovering that they had become unstable. *Id.* at 99. We held that the evidence was legally insufficient to prove that CMH had actual or constructive notice of the risk of the shaky platform, noting that "an owner or occupier is not liable for deterioration of

its premises unless it knew of or by reasonable inspection would have discovered the deterioration." *Id.* at 101–03. We acknowledged that "Daenen would be entitled to recover if he presented evidence that CMH actually knew that the platform and step unit had become unstable or if a reasonable inspection would have revealed that the unit was no longer safe." *Id.* at 102. As to the type of evidence necessary to demonstrate a reasonable inspection that would have revealed the danger, we explained:

> [T]here was no evidence or even contention that CMH had failed to inspect as frequently as it reasonably should. Similarly, there is no evidence that the instability in the step and platform unit had existed for a sufficient time that CMH had constructive notice of the unreasonable risk of harm.

*Id.* Here, no evidence was presented that Fort Brown actually knew the chair had become dangerous or that Fort Brown failed to reasonably inspect the chairs. The record demonstrates that Fort Brown inspected and washed the chairs six days a week out of concern for the corrosive effect of the pool chlorine and salt water in the air. Gillenwater also offered no evidence that the broken welds existed on the chair for any length of time prior to the accident. The fact that Gillenwater's fingertip was severed and that the chair broke is evidence that a dangerous condition existed, but it offers no evidence as to how long it existed. The only possible evidence that a broken weld existed in the chair for any length of time is Collins' testimony that he repaired other chairs with hairline cracks after the accident. But not only does a hairline crack not present the same degree of danger as a broken weld, this argument addresses knowledge of *other chairs*, not the one that actually broke. Therefore, we reverse the court of appeals'

judgment and render a take-nothing judgment in favor of Fort Brown.

Justice JOHNSON did not participate in the decision.