# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00042-CV

**Angela Brescia and Duane Brescia, Appellants**

**v.**

**Slack & Davis, L.L.P. and Donna Bowen, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-06-002500, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Angela Brescia and Duane Brescia (the "Brescias") sued Slack & Davis, L.L.P., and attorney Donna Bowen (collectively, "Slack & Davis" or "the law firm") for negligence, deceptive trade practices, and breach of fiduciary duty in the handling of the Brescias' underlying medical-malpractice lawsuit. The trial court denied the Brescias' motion for entry of a discovery-control plan (Level 3) and struck two of the Brescias' expert-witness affidavits. The court then granted Slack & Davis's no-evidence motion for summary judgment and rendered judgment that the Brescias take nothing on all claims. On appeal, the Brescias argue seven issues,[1] summarized by the following three issues: (1) whether the trial court abused its discretion by denying the Brescias' motion for entry of a discovery-control plan and by striking the affidavits of two of the Brescias' experts;

---

[1] The Brescias concede the supreme court's decision in *Fort Brown Villas III Condo. Ass'n. v. Gillenwater* disposes of their fourth issue. 285 S.W.3d 879 (Tex. 2009).

(2) whether claims for deceptive trade practices and breach of fiduciary duties are subject to the "suit-within-a-suit" requirement; and (3) whether Slack & Davis's no-evidence motion was legally sufficient to support a take-nothing summary judgment on all claims. We will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2001, Angela Brescia was admitted to Presbyterian Hospital ("Presbyterian") in Dallas for the delivery of her first child. Her obstetrician was Dr. Bernadine Bank, who practiced through the Walnut Hill Obstetrics & Gynecology Association ("Walnut Hill"). To induce labor, Angela was administered the drug Cytotec as a cervical ripener. The United States Food and Drug Administrative ("FDA") had approved Cytotec for treating peptic ulcers but not to induce labor. Both the drug's manufacturer and the FDA had issued warnings against giving Cytotec to pregnant women, noting that uterine rupture and maternal or fetal death had been reported when the drug was used "off-label" as a labor inducer. After receiving the drug, Angela's uterus ruptured and her baby was delivered by emergency cesarean section.

While still hospitalized and recovering from surgery, Angela began experiencing abdominal swelling and severe discomfort. Five days after the cesarean section, a surgeon determined that Angela's colon had been perforated multiple times and she had peritonitis as a result. The surgeon removed 60 percent of Angela's colon and part of her small intestine. She has since endured several additional surgical procedures to correct intestinal problems and resulting complications that continue to this day and has been told she cannot safely bear any more children.

After initially retaining another law firm, the Brescias hired Slack & Davis to pursue

2

a medical-malpractice case on their behalf. Bowen was the primary Slack & Davis attorney working on the case. Slack & Davis asserts that it consulted with three doctors to review Angela's medical records and that two of those experts told the law firm that Dr. Bank, Walnut Hill, and Presbyterian (collectively, the "underlying healthcare defendants") should have informed Angela of the risks and hazards associated with the use of Cytotec. The Brescias believed that, beyond the informed-consent claim, the underlying healthcare defendants were also negligent in the following aspects: (a) negligent administration of Cytotec to induce labor; (b) negligent follow-up care after Angela's cesarean section; (c) negligent failure to timely diagnose and treat Angela's post-cesarean-section infection; and (d) Dr. Bank's negligent delay in calling for a surgical consultation (collectively, the "additional medical-malpractice claims"). Yet, Slack & Davis contends the three medical experts it consulted opined that the additional medical-malpractice claims were not viable and they told Slack & Davis they would not testify that the underlying healthcare defendants breached the standard of care with regard to those additional claims. In August 2003, Slack & Davis filed suit against the underlying healthcare defendants, asserting they failed to obtain Angela's informed consent to use Cytotec and that failure breached the applicable standard of care (the "underlying lawsuit").

In September 2004, the Brescias fired Slack & Davis and hired another law firm. Just prior to being fired, however, Slack & Davis reached an agreement with the underlying healthcare defendants not only to continue the original trial date but also to maintain the existing expert-designation deadline that had passed in May 2004. As a result, the Brescias' new counsel, David Marchand, was unable to designate experts who would testify to the Brescias' additional medical-malpractice claims. The Brescias were subsequently forced to settle the underlying lawsuit "for

3

nuisance value." Six months later, in July 2006, the Brescias sued Slack & Davis.

Although the Brescias' original petition stated the case would be conducted as a Level -3 discovery-control-plan case, no motion for entry of a discovery-control plan was filed. On September 5, 2007, the Brescias filed a response to Slack & Davis's request for disclosures that stated no testifying expert witnesses had been retained. On September 7, 2007, they filed their first amended petition.

On September 17, 2007, Slack & Davis filed a no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(i). In its motion, Slack & Davis alleged there was no expert evidence to support the Brescias' claims that they would have prevailed in the underlying lawsuit. Two days later, the Brescias filed a motion for a Level-3 discovery-control plan and served supplemental discovery responses, identifying William Neumann and Dr. Marsden Wagner as testifying expert witnesses. On October 8, 2007, the Brescias filed a response to Slack & Davis's summary-judgment motion, to which they attached, among others, the affidavits of Dr. Wagner and Neumann.

The trial court denied the Brescias' motion for entry of a discovery-control plan. After sustaining Slack & Davis's objections to the affidavits of Dr. Wagner and Neumann on the grounds that neither was timely designated as an expert witness, the trial court struck the affidavits as incompetent summary judgment evidence. The trial court then granted Slack & Davis's no-evidence motion for summary judgment and rendered judgment that the Brescias take nothing from Slack & Davis. The Brescias now bring this appeal.

**DISCUSSION**

*Standard of Review*

We review the trial court's decision to deny the Brescias' motion for entry of a discovery-control plan under an abuse-of-discretion standard. *See Brown v. Brown*, 145 S.W.3d 745, 750 (Tex. App.—Dallas 2004, pet. denied) (court did not abuse its discretion by denying motion to modify discovery-control plan). The trial court abuses its discretion when it acts without reference to any guiding rules and principles, such that its ruling is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004).

We review de novo the trial court's decision to grant summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Under the no-evidence standard set forth in Rule 166a(i), a defendant may, after adequate time for discovery, move for summary judgment on the ground there is no evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is, in essence, a pretrial directed verdict, and we apply the same legal-sufficiency standard in reviewing a no-evidence summary judgment as we use in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-751 (Tex. 2003). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* at 750. If the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact, a no-evidence summary judgment is improperly granted. *Id.* at 751. "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

*Motion for Entry of a Level-3 Discovery-Control Plan*

A plaintiff must allege in the original petition whether discovery is intended to be conducted under Level 1, 2, or 3. *See* Tex. R. Civ. P. 190.1. The Brescias' petition stated an intention to conduct discovery under Level 3. However, "[T]he initial pleading required by Rule 190.1 is merely to notify the court and other parties of the plaintiff's intention; it does not determine the applicable discovery level or bind the court or other parties." *Id.* 190 cmt.1. A case can be designated Level 3 only by court order, despite pleading an intention to conduct discovery under Level 3. *Id.*

The Brescias assert the trial court erred in denying their motion for entry of a Level-3 discovery-control plan. Because the Brescias did not file their motion for entry of a discovery-control plan until the expert-designation deadline under Level 2 had passed and Slack & Davis had filed their motion for summary judgment, a Level-2 discovery-control plan was in effect. The Brescias did not dispute that the expert-designation deadline had passed. However, they requested that the trial court, "in the interest of justice," enter a scheduling order with a new expert-designation-deadline. Without explanation, the trial court denied the Brescias' motion.

The Brescias contend Texas Rule of Civil Procedure 190.4(a) required the court to grant their motion and enter a discovery-control plan that *changed* the Level-2 deadlines applicable to this lawsuit. *See* Tex. R. Civ. P. 190.4(a). We disagree. Rule 190.4(a) states, in pertinent part, the following: "The court must, on a party's motion . . . order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit." But Rule 190.4 does not require that the court's order provide deadlines different from those under a

6

Level-2 case. Rather, the decision to provide different deadlines is left to the court's discretion. *See* Tex. R. Civ. P. 190.4(b) ("The discovery control plan ordered by the court . . . *may* change any limitation on the time for . . . discovery set forth in these rules." (Emphasis added.)); *Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 327 (Tex. App.—Fort Worth 2007, pet. denied); *Baize v. Scott & White Clinic*, No. 03-05-00780-CV, 2007 WL 135956, at *9 (Tex. App.—Austin Jan. 22, 2007, pet. denied) (mem. op.) (court's discretion to provide deadlines different from those under Level-2 case). In other words, even under a Level-3 scheduling order, Level-2 deadlines continue to apply "unless specifically changed in the discovery control plan ordered by the court." *See* Tex. R. Civ. P. 190.4(b).

The Brescias further argue Rule 190.5 provides that a court must modify a discovery-control plan "when the interest of justice requires" and that the circumstances of this lawsuit compelled the trial court to modify the discovery-control plan. *See id.* 190.5. They point out their original petition stated this case would be conducted under a Level-3 discovery-control plan, and both sides subsequently conducted active written discovery. The Brescias note that their trial attorney, Jerome Schiefelbein, wrote Slack & Davis in December 2006 seeking entry of a docket-control order and trial date. In his affidavit attached to the Brescias' response to Slack & Davis's motion for summary judgment, Schiefelbein stated that, although he received no response to his December 2006 letter, he was told during conversations with Slack & Davis that they would discuss those issues later. Schiefelbein stated he believed that, once written discovery had concluded, Slack & Davis would agree to a Level-3 discovery-control plan without the need for a formal motion. He affirmed he based this belief on his conversations with Slack & Davis and his experience with

7

another law firm in an unrelated case.  On September 10, 2007, Schiefelbein again wrote opposing

counsel, suggesting trial dates and entry of a discovery-control plan.  However, on September 18,

2007, he received a letter from Slack & Davis stating they had filed their no-evidence motion for

summary judgment.  The Brescias assert these circumstances and the "stringing Schiefelbein along

until the Level 2 deadline expired" required the trial court, in the interest of justice, to modify the

Level-2 discovery-control plan by extending the expert-designation deadline.

Rule 190.5 ("Modification of Discovery Control Plan") provides:

> The court may modify a discovery control plan at any time and *must do so when the interest of justice requires*.  The court must allow *additional discovery*:
>
> (a) related to new, amended or supplemental pleadings, or new information disclosed in a discovery response or in an amended or supplemental response, if:
>
>> (1) the pleadings or responses were made after the deadline for completion of discovery or so nearly before that deadline that an adverse party does not have an adequate opportunity to conduct discovery related to the new matters, and
>> (2) the adverse party would be unfairly prejudiced without such additional discovery;
>
> (b) regarding matters that have changed materially after the discovery cutoff if trial is set or postponed so that the trial date is more than three months after the discovery period ends.

Tex. R. Civ. P. 190.5 (emphasis added).

Rule 190.5 lists two specific situations in which the trial court must modify a

discovery-control plan to allow for additional discovery. *Id.* 190.5(a), (b).  The Brescias do not argue

8

that either of these two situations applies. Rather, they contend that modification was called for "in the interest of justice."

This cause had been pending for fourteen months when, in response to Slack & Davis's request for disclosures, the Brescias stated no testifying expert witnesses had been retained. Only after Slack & Davis filed its no-evidence motion for summary judgment did the Brescias file their motion for entry of a discovery-control plan and serve supplemental discovery responses identifying their expert witnesses. In any event, the trial court considered the Brescias' motion, Slack & Davis's response, arguments of counsel, and the Brescias' post-hearing brief before denying the motion. In making its decision, the court could reasonably have concluded that the circumstances set forth in Schiefelbein's affidavit did not, in the interest of justice, compel the court to modify the Level-2 deadlines. The court could also have reasonably concluded that Schiefelbein should not have relied on his experience with different attorneys in another lawsuit but should have timely filed a Rule 190.4 motion in an effort to obtain a Level-3 discovery-control order and documented in writing any oral agreements between the parties as required by Rule 11. *See* Tex. R. Civ. P. 11, 190.4. We conclude it was within the trial court's discretion to hold that "the interest of justice" did not require modification of the discovery-control plan. *See Brown*, 145 S.W.3d at 750; *Fuentes v. Schooling*, No.07-07-00118-CV, 2008 WL 5083012, at *4 (Tex. App.—Amarillo Dec. 3, 2008, no pet.) (mem. op.); *Abdelhak v. Farney*, No. 04-07-00121-CV, 2007 WL 4180133, at *2 (Tex. App.—San Antonio Nov. 28, 2007, no pet.) (mem op.). The Brescias' fifth issue is overruled.

9

***Striking the Affidavits of the Brescias' Expert Witnesses***

In their sixth issue, the Brescias argue the trial court abused its discretion in striking the affidavits of their experts Wagner and Neumann as untimely designated. If a party fails to timely designate a witness, then testimony from that witness will be excluded unless the trial court determines that the party seeking to introduce the evidence establishes either (1) there was good cause for the failure, or (2) the failure to designate witnesses will neither unfairly surprise nor unfairly prejudice the other parties. Tex. R. Civ. P. 193.6(a); *Fort Brown Villas III Condo. Ass'n. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied). The burden of establishing good cause or lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence. Tex. R. Civ. P. 193.6(b). A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record. *Id.* The trial court's decision to exclude the affidavits of the untimely-designated expert witnesses Wagner and Neumann can be overturned only on a finding of abuse of discretion. *See Fort Brown Villas*, 285 S.W.3d at 881. Abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to be essentially a clear and prejudicial error of law. *In re Bass*, 1113 S.W.3d 735, 738 (Tex. 2003).

The Brescias do not assert they established good cause for their failure to timely designate expert witnesses. Rather, they contend Slack & Davis was neither unfairly surprised nor unfairly prejudiced by their late designation of experts Wagner and Neumann. They argue no depositions had been taken, no trial date had been set, and Slack & Davis had designated no experts, thus "undermining any suggestion" that Slack & Davis "truly believed this was a Level 2

10

case or that it needed the Brescias' expert designations to prepare for trial." Even if Slack & Davis were somehow surprised or prejudiced by the Brescias' late designation of Wagner and Neumann, the Brescias contend "that can hardly be described as 'unfair' under these facts and particularly in light of [Slack & Davis's] role in creating the situation at hand."

We find the Brescias' arguments unpersuasive. Rule 193.6(a)(2) reads as follows:

> (a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
> \* \* \*
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a)(2).

The supreme court discussed the concept of unfair surprise in *Alvarado v. Farah Manufacturing Co.*:

> Determining whether a party is really surprised by an offer of testimony not formally identified in discovery is difficult. The better prepared counsel is for trial, the more likely he is to have anticipated what evidence may be offered against his client, and the less likely he is to be surprised. It would hardly be right to reward competent counsel's diligent preparation by excusing his opponent from complying with the requirements of the rules. As we explained in [*Sharp v. Broadway National Bank*]:

11

> A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory. . . .

830 S.W.2d 911, 915 (Tex. 1992) (quoting *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex. 1990)). Depending on the discovery plan level, the discovery rules establish a date certain for the completion of discovery. *Fort Brown Villas*, 285 S.W.3d at 882; *see* Tex. R. Civ. P. 190.2-.4. Under the discovery rules, no longer is there a concern that discovery will be incomplete at the summary judgment phase. *Fort Brown Villas*, 285 S.W.3d at 882. The specific deadline established by the pretrial discovery rules ensures that the evidence presented at the summary judgment stage and at the trial stage remains the same. *Id.*

In this case, the Brescias designated Wagner and Neumann as their experts six months after the expert-designation deadline had expired and only after Slack & Davis had filed its motion for summary judgment. Apparently, after balancing Slack & Davis's preparation for trial against the failure of Brescias' counsel to comply with the requirements of the discovery rules, the court determined that the affidavits of the Brescias' untimely-designated expert witnesses should be excluded. We hold the trial court's decision to exclude the affidavits of experts Wagner and Neumann was not so arbitrary and unreasonable as to be an abuse of discretion. *See Fort Brown Villas*, 285 S.W.3d at 882; *Ersek*, 69 S.W.3d at 272. We further hold the Brescias have failed to satisfy their burden of showing that no reasonable judge could have determined that the affidavits of the Brescias' expert-witnesses would not have unfairly surprised or unfairly prejudiced Slack & Davis. *Id.* The Brescias' sixth issue is overruled.

12

***Sufficiency of Rule 166a(i) Motion***

In their first, third, and seventh issues, the Brescias assert Slack & Davis's Rule 166a(i) motion was legally insufficient to support the trial court's decision to grant summary judgment on all their claims. The Brescias argue the motion failed to identify any of the elements of a Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA") cause of action and a breach-of-fiduciary-duty claim with the kind of specificity Rule 166a(i) requires. *See* Tex. R. Civ. P. 166a(i) (motion must state elements to which there is no evidence). They contend the closest the motion came to identifying the elements of a DTPA claim and a breach-of-fiduciary-duty claim was to mention the concept of producing cause. Slack & Davis, however, contends its motion complied with Rule 166a(i) because, in each of the Brescias' claims, it specifically identified causation as the element for which there was no evidence. The Brescias refute this contention, arguing the motion only mentioned the concept of producing cause in the context of whether Slack & Davis's negligence caused the Brescias' damages—not whether the Brescias suffered damages as a result of Slack & Davis's deceptive trade practices and breach of fiduciary duty. The Brescias urge that, because the trial court granted relief beyond what Slack & Davis's no-evidence motion properly requested, that is, the court granted summary judgment and rendered a take-nothing judgment on all the Brescias' claims, the judgment should be reversed. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

To prevail on a no-evidence motion, the movant must allege there is no evidence of an essential element of the adverse party's claim. Tex. R. Civ. P. 166a(i); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A no-evidence motion that merely

13

challenges the sufficiency of the nonmovant's case and fails to specifically state the elements for which there is no evidence is fundamentally defective and insufficient to support summary judgment as a matter of law. *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 824 (Tex. App.—Fort Worth 2008, no pet.).

The Brescias asserted claims for professional negligence, deceptive-trade violations, and breach of fiduciary duties against Slack & Davis. The law firm moved for a no-evidence summary judgment on all of the Brescias' claims on the basis "there is no expert evidence that the Brescias would have prevailed in the Underlying Lawsuit." Their motion asserted the following:

1. *As to all of the Brescias' claims*, there is no expert medical testimony that the Underlying Defendants in the Underlying Lawsuit breached the applicable standard of care with respect to the Additional Medical Malpractice Claims. Without such evidence, there is no evidence the Brescias would have prevailed on the Additional Medical Malpractice Claims, and there is no evidence that Slack & Davis's failure to pursue the Additional Medical Malpractice Claims was the proximate or producing cause of any damage to the Brescias.

2. *As to all claims,* there is no evidence that the alleged wrongful actions of the Underlying Defendants concerning the Additional Medical Malpractice Claims were the proximate or producing cause of damage to Angela. Without such evidence, there is no evidence that the Brescias would have prevailed on the Additional Medical Malpractice Claims, and there is no evidence that Slack & Davis's failure to pursue the Additional Medical Malpractice Claims was the proximate or producing cause of any damages to the Brescias.

14

(Emphasis added.)

For an action to succeed under the DTPA, the following elements must be proven: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (West Supp. 2010); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Attorneys may not be sued under the DTPA unless they engage in one of the following acts: (1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion; (2) a failure to disclose information; (3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; or (4) a breach of an express warranty that cannot be characterized as advice, judgment, or opinion. *See* Tex. Bus. & Com. Code Ann. § 17.49(c) (West Supp. 2010); *Latham v. Castillo*, 972 S.W.2d 66, 69 n. 2 (Tex. 1998). The DTPA defines an "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5) (West Supp. 2010). Taking advantage of a consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree requires a showing that the resulting unfairness was "glaringly noticeable, flagrant, complete and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001); *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985).

The elements of a breach-of-fiduciary-duty claim are the following: (1) a fiduciary relationship between plaintiff and defendant; (2) a breach of the fiduciary duty owed to the plaintiff by the attorney-defendant; (3) that causes; (4) damages to the plaintiff. *Beck v. Law*

15

*Offices of Edwin J. Terry, Jr.,* 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.); *see also* Restatement (Third), The Law Governing Lawyers § 49 (2001).

### *Fractured Professional-Negligence Argument*

To determine whether the Brescias have actually alleged DTPA and breach-of-fiduciary-duty claims, we first address Slack & Davis's argument that the Brescias' breach-of-fiduciary-duty and DTPA claims are, in fact, fractured professional-negligence claims.[2] The rule against fracturing a professional-negligence claim holds that a case arising out of an attorney's alleged bad advice or improper representation may not be split into separate claims for negligence, breach of contract, or fraud (or any other non-negligence theory), because the real issue remains whether the attorney exercised that degree of care, skill, and diligence that attorneys of ordinary skill and knowledge commonly possess and exercise. *Beck*, 284 S.W.3d at 426-27; *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied). The rule against fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a professional-negligence claim into other causes of action.

---

[2] As noted in *Beck*, courts often use the terms "legal malpractice" and "professional negligence" interchangeably to refer to claims arising from an attorney's allegedly inadequate legal representation, although "professional negligence" may be the more precise term. *Beck v. Law Offices of Edwin J. Terry, Jr.*, 284 S.W.3d 416, 427 n.10 (Tex. App.—Austin 2009, no pet.). We will use the term "professional negligence" to describe a negligence claim in which the issue is whether an attorney exercised that degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess and exercise. *See Deutsch v. Hoover, Bax, & Slovacek, L.L.P.*, 97 S.W.3d 179, 184 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We will use the term "legal malpractice" to refer to any claim brought by a client against that client's attorney, regardless of whether the claim asserts professional negligence, breach of fiduciary duty, DTPA violations, or any other allegation. *Id.*

16

The ultimate issue is whether there has been a breach of duty that causes damage. *Ersek*, 69 S.W.3d at 275.

We must first ascertain whether the facts that are the basis for the Brescias' asserted causes of action implicate only Slack & Davis's duty of ordinary care or some other actionable statutory or fiduciary duties. *Beck*, 284 S.W.3d at 428. The determination of whether a complaint against an attorney is actionable in negligence versus some other legal theory is a question of law. *Id.*

### A. DTPA Claim

In their first amended petition, the Brescias alleged Slack & Davis made the following misrepresentations of material fact: the law firm represented (1) it would fully fund, investigate, and prosecute all claims, including the Brescias' negligence- and gross-negligence-based claims, against all possible parties when, in fact, it only investigated and prosecuted the lack-of-informed-consent claims against Dr. Bank and Presbyterian; (2) it would make diligent attempts to locate and hire medical experts to support the Brescias' negligence-based claims when, in fact, it only contacted two doctors and then hired one who had used Cytotec as a cervical ripener in his own practice; (3) it would amend the pleadings to include the Brescias' negligence-based claims when, in fact, it never attempted such an amendment; (4) it would include as part of the Brescias' claims the numerous instances identified by consulting-expert "Dr. X" in which Dr. Bank and Presbyterian had been grossly-negligent when, in fact, no such allegations were ever included; and (5) it would assign attorneys and staff fully qualified to handle the Brescias' claims when, in fact, the attorney in charge was inexperienced in prosecuting medical malpractice claims

17

and the in-house nurse in charge of the case file had undisclosed bias against the Brescias.

The Brescias attached Duane's affidavit to their response to Slack & Davis's no-evidence motion. Duane stated that he and Angela provided the law firm with the following: (1) the name of a doctor willing to testify that Dr. Bank was negligent in performing Angela's emergency caesarean section; (2) the name of a nursing expert knowledgeable in the use and administration of Cytotec; and (3) the name of a renowned physician to explain the dangers of Cytotec when used to induce labor. He stated Slack & Davis never acted on any of those names but insisted it wanted to use its own "contacts." The law firm also repeatedly reassured the Brescias that it was doing all it could to obtain additional expert witnesses who would testify as to their negligence and other potential claims. He further stated that, without his and Angela's knowledge or consent, Slack & Davis agreed not only to a continuance of the trial date but also to "keep in place the May 5th cut off date for identifying expert witnesses, which had passed several months before." He reiterated that Slack & Davis's agreement to "freeze discovery" was done without the Brescias' knowledge or consent. Duane then stated the law firm's actions caused his and Angela's "valuable claims to be lost and we were forced to settle for nuisance value."

The affidavit of David Marchand, an attorney whose law practice largely involved medical malpractice, was also attached to the Brescias' response. He stated that, because of the catastrophic injuries Angela suffered as a result of the apparent negligence of the underlying healthcare defendants in administering a dangerous drug with well-known propensities and warnings, he and his firm took the Brescias' case, which "appeared to be a seven-figure lack of informed consent." He further noted he later learned that, prior to the time Slack & Davis

18

withdrew from the case, the parties by joint motion had requested that the court reset the trial date. Marchand pointed out that, on September 20, 2004, the court entered an order resetting the trial date and also substituting Marchand's law firm for Slack & Davis. He continued:

> Inexplicably and unknown to me, Slack & Davis, in the joint motion to continue, left in place the previous limitation as to the time to identify [the Brescias'] expert witnesses. In other words, [the Brescias] were left with an expert who had only opined on informed consent, not on the negligence, on the part of the [underlying healthcare defendants] in administering Cytotec, failing to adequately monitor [Angela] during her labor, and in damaging her colon.
>
> I twice tried to request relief from the scheduling order Slack & Davis had agreed to, but without success. Because of Slack & Davis's agreement, the trial judge left in place the May 4th date to designate expert witnesses that predated our involvement.
>
> The actions of Slack & Davis, coupled with their inadequate pleadings, resulted in changing a valuable legal right to one of limited value.

The Brescias allege Slack & Davis's affirmative misrepresentations constituted unconscionable conduct or course of action on the law firm's part, actionable under section 17.49(c)(1) and (3) of the DTPA, which caused them to lose their day in court and was a producing cause of their economic damages. Section 17.49(c)(1) and (3) reads as follows:

> (c)    Nothing in this subchapter ["Deceptive Trade Practices and Consumer Protection"] shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill. This exemption does not apply to:

(1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;

*    *    *

(3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion . . . .

Tex. Bus. & Com. Code Ann. § 17.49(c)(1), (3). In other words, an attorney's actions or course of action and express misrepresentations of material facts are not actionable under the DTPA if they can be characterized as advice, judgment, or opinion.

The Brescias assert that Slack & Davis affirmatively misrepresented it was fully investigating and prosecuting their negligence- and gross-negligence claims and would amend the pleadings to include those claims against all parties. And, in his affidavit, Duane stated he and Angela were repeatedly assured by Slack & Davis that it was searching for appropriate experts so that it could replead and add their negligence claims to their lack-of-informed-consent claim; yet, the law firm only investigated the Brescias' lack-of-informed-consent claim and contacted only two doctors, one of whom had used Cytotec as a cervical ripener in his own practice. Moreover, the Brescias contend that, without their knowledge and consent, Slack & Davis entered into an agreed scheduling order with the underlying healthcare defendants that maintained the date for designating expert witnesses, a date that had passed approximately four months earlier. The Brescias argue these were express misrepresentations and unconscionable conduct on the part of Slack & Davis in its representation of the Brescias that were deceptive and thus actionable under the DTPA. We disagree.

20

Unlike the attorney in *Latham* who affirmatively represented to his clients that he was actively pursuing their claims when, in fact, he had never filed the suit and then limitations ran, the Brescias only contend that Slack & Davis failed to actively pursue the Brescias' negligence- and gross-negligence claims and to disclose that the law firm had entered into an agreed scheduling order with the underlying healthcare defendants that maintained the date for designating expert witnesses. After reviewing the Brescias' DTPA allegations, we conclude that Slack & Davis made no express misrepresentations of material facts that cannot be characterized as advice, judgment, or opinion. Nor do we find that the law firm engaged in any unconscionable actions or course of action, that is, acts or practices that, to the Brescias' detriment, took advantage of their lack of knowledge, ability, experience, or capacity to a grossly unfair degree, that cannot be characterized as advice, judgment, or opinion. *See* Tex. Bus. & Com. Code Ann § 17.45(5). Consequently, we conclude that, because their allegations ultimately go to the adequacy of Slack & Davis's legal representation, the Brescias' DTPA claim is essentially a dressed-up professional-negligence claim and that summary judgment was appropriate on the Brescias' DTPA claim. *See Beck*, 284 S.W.3d at 431-32; *Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189-90 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (if gist of client's complaint is that attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as professional-negligence claim, rather than some other claim); *see also* Tex. Bus. & Com. Code Ann. § 17.49(c).

### B.    *Breach-of-Fiduciary-Duty Claim*

The Brescias further alleged in their petition that, as their attorneys, Slack & Davis

breached its fiduciary duty. "A fiduciary relationship exists between attorney and client." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). The relationship existing between attorney and client is highly fiduciary in nature and requires proof of "perfect fairness" on the attorney's part. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1965); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied). The essence of a breach of fiduciary duty involves an attorney's integrity and fidelity. *Kimleco Petroleum*, 91 S.W.3d at 923. As a fiduciary, an attorney owes the client a duty of undivided loyalty. *See* Restatement (Third) of Agency § 8.01 (2006). Incident to the general duty of loyalty is the duty of full disclosure. *Id.* § 8.11 (discussing the duty of disclosure). "As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation." *Willis*, 760 S.W.2d at 645. An attorney's breach of the fiduciary duty of full disclosure is tantamount to fraudulent concealment. *Id.*; *Jackson Law Office*, 37 S.W.3d at 22.

Attorneys breach their fiduciary duties to clients by their "failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the clients' interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making representations." *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The Brescias assert Slack & Davis breached its fiduciary duty to them by its failure to: (1) disclose its intent not to "prove-up" the Brescias' negligence-based claims; (2) disclose its decision to reallocate firm assets away from medical-malpractice claims; (3) timely disclose the identity of "Dr. X" and the true relationship between Presbyterian and Dr. X; (4) disclose the bias and conflict of interest of the in-house nurse in charge of the case file; (5) disclose that the law firm had not sought expert witnesses to support the

22

Brescias' negligence-based claims despite prior representations to the contrary; (6) inform the Brescias in advance of the law firm's intention to move for a continuance of the trial date and enter into an agreed scheduling order without the Brescias' knowledge or consent; and (7) advise the Brescias of the continuance and terms of the agreed scheduling order after the law firm was terminated on September 16, 2004, and before the trial court signed the order on September 20, 2004. In his affidavit attached to the Brescias' response to Slack & Davis's motion, Duane stated that he and Angela, as the law firm's clients, expected full, complete, and honest disclosure; Slack & Davis, however, either withheld information from them, misrepresented the information it gave them, or failed to act on the information the law firm had solicited from them. As a result of the law firm's conduct and breach of fiduciary duty, the Brescias allege they were unable to prosecute their valuable negligence-based claims in the underlying lawsuit, resulting in their damages.

Slack & Davis responds that the Brescias' breach-of-fiduciary-duty complaint is actually a fractured professional-negligence claim requiring them to prove they would have prevailed in the underlying lawsuit. We agree. The Brescias alleged that Slack & Davis failed to inform them it had (1) decided not to pursue the Brescias' negligence-based claims, (2) not sought expert witnesses, (3) reallocated firm assets away from medical-malpractice claims, (4) moved for a continuance of the trial date, and (5) entered into an agreed scheduling order without advising the Brescias of the terms of the order. The Brescias also alleged Slack & Davis failed to disclose the identity of "Dr. X" and the true relationship between Presbyterian and Dr. X and that Slack & Davis's in-house nurse in charge of the case file was biased and had a conflict of interest. We

23

conclude these allegations complain about the quality of Slack & Davis's representation, specifically the law firm's failure to properly advise, inform, and communicate with the Brescias about their case, which are claims of professional negligence. *See Murphy v. Gruber*, 241 S.W.3d 689, 699 (Tex .App.—Dallas 2007, pet. denied).

The gist or essence of the Brescias' breach-of-fiduciary-duty allegations is that Slack & Davis did not exercise that degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess; therefore, their allegations should have been pursued as professional-negligence claims. *See Kimleco Petroleum*, 91 S.W.3d at 924 (regardless of theory plead, as long as crux of complaint is that attorney did not provide adequate legal representation, claim is for professional negligence); *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ) (attorney's negligence may consist in want of ordinary care in preparing, managing, and presenting litigation that affects client's interests). Because the Brescias impermissibly fractured their professional-negligence claims by asserting them as breach-of-fiduciary-duty claims, we hold that they failed to defeat Slack & Davis's entitlement to summary judgment as to those claims. The Brescias' first, third, and seventh issues are overruled.

### *Expert Medical Testimony and Economic Damages*

Slack & Davis argues that, assuming the Brescias' DTPA and breach-of-fiduciary-duty claims are not fractured professional-negligence claims, the Brescias had to present expert medical testimony to maintain their DTPA and breach-of-fiduciary-duty claims for economic damages. The law firm contends the Brescias could recover economic damages only if they could prove they would have won the underlying lawsuit, that is, a "suit-within-a-suit" requirement.

Disputing the law firm's contention, the Brescias assert they did not have to present expert medical testimony to maintain their DTPA and breach-of-fiduciary-duty claims. Rather, they argue in their second issue that the trial court erred by reading a "suit-within-a-suit" requirement into all the Brescias' causes of action. Because we have determined that their DTPA and breach-of-fiduciary-duty claims are essentially dressed-up professional-negligence claims, we need not reach the Brescias' second issue.

## CONCLUSION

Having overruled all of the Brescias' issues, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: November 19, 2010