**Affirmed in Part, Reversed and Remanded in Part and Opinion filed January 14, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00588-CV

---

**JEFFERY MAY, SHARON MAY, GILBERT APODACA, JEANETTE ALEJANDRO, MARK BOGOSIAN, JANA BOGOSIAN, DAVID BOYD, SENA BOYD, H.M BURLESON, JR., JAMES WARD, ROBERT CAMPBELL, CHERYL CAMPBELL, JOHN COON, BARBARA COON, FENOGLIO, LACEY FENOGLIO, JOHN GOLDEN, SANDRA GOLDEN, DOROTHY JAWORSKI, JOEY KING, RACHELLE KING, CRAIG LAUGHLIN, DEANN HARMON-LAUGHLIN, PAULA MCCLURG, GRANT MELHORN, AMY MELHORN, JASON QUINN, DONNA QUINN, JOSHUA RUSK, REBECCA RUSK, HERMAN SALGADO, GREG SEELEY, JULIE SEELEY, SCOTT SEESE, MARCIA SEESE, DWIGHT SMITH, MIRIAM SMITH , LINDA SPAULDING, DAVID SOLT, LINDA SOLT, AND THE VOTH TRUST, Appellants/Cross-Appellees**

**V.**

**TICOR TITLE INSURANCE, CHICAGO TITLE INSURANCE COMPANY, COMMONWEALTH LAND TITLE INSURANCE COMPANY, LAWYERS TITLE INSURANCE CORPORATION, AND ALAMO TITLE COMPANY, Appellees/Cross-Appellants**

**O P I N I O N**

The May Appellants[1] sued the Ticor Appellees[2] for breach of contract and breach of the duty of good faith and fair dealing. The claims, asserted in five cases, were predicated on a contention that the Ticor Appellees offered insufficient compensation for mineral interests that were (1) reserved by the sellers when the May Appellants purchased certain properties, and (2) not excluded from title insurance policies on those properties issued by the Ticor Appellees to the May Appellants.

The jury determined the fair market value of the lease signing bonus and royalty for one full net mineral acre as of July 1, 2008; the trial court then used the jury's findings to compute the value of the lost mineral interests covered by the Ticor Appellees' title insurance policies. In conformity with the jury's determination, the trial court found the Ticor Appellees to be in breach of the title insurance contracts as a matter of law based on the parties' stipulations. The trial court denied the May Appellants' request to award attorneys' fees and to charge their expert fees as costs of court.

---

[1] The May Appellants are Jeffrey May, Sharon May, Gilbert Apodaca, Jeanette Alejandro, Mark Bogosian, Jana Bogosian, David Boyd, Sena Boyd, H.M Burleson, Jr., James Ward, Robert Campbell, Cheryl Campbell, John Coon, Barbara Coon, Fenoglio, Lacey Fenoglio, John Golden, Sandra Golden, Dorothy Jaworski, Joey King, Rachelle King, Craig Laughlin, DeAnn Harmon-Laughlin, Paula McClurg, Grant Melhorn, Amy Melhorn, Jason Quinn, Donna Quinn, Joshua Rusk, Rebecca Rusk, Herman Salgado, Greg Seeley, Julie Seeley, Scott Seese, Marcia Seese, Dwight Smith, Miriam Smith, Linda Spaulding, David Solt, Linda Solt, and The Voth Trust.

[2] The Ticor Appellees are Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and Alamo Title Company.

The May Appellants challenge the trial court's denial of attorneys' and expert fees, arguing that the trial court (1) abused its discretion when it sanctioned the May Appellants by preventing their attorney from testifying as an expert; (2) abused its discretion when it denied the May Appellants' request to award attorneys' fees; and (3) erred when it denied the May Appellants' request to award expert fees as costs of court.

In their cross-appeal, the Ticor Appellees argue that the trial court erred when it (1) signed a judgment in favor of the May Appellants on their breach-of-contract claim; (2) awarded costs to the May Appellants; (3) chose an inappropriate date for the calculation of prejudgment interest; and (4) failed to award the Ticor Appellees litigation costs under Texas Rule of Civil Procedure 167.4.

We affirm the trial court's judgment in part, reverse in part, and remand for modification of the trial court's judgment in accordance with our holdings.

## BACKGROUND

The May Appellants own property in Argyle in Denton County, Texas. Their predecessor in title is Wynne/Jackson Lakes Development, LP. Wynne/Jackson reserved an undivided one-half interest in all oil, gas, and other minerals under the May Appellants' properties. The May Appellants purchased title insurance policies from the Ticor Appellees when they purchased their properties. These policies did not list the Wynne/Jackson reservation of mineral interests as an exception to coverage. Beginning in September 2008, the May Appellants filed notices of claims with the Ticor Appellees under their respective title insurance policies seeking compensation for loss of the reserved Wynne/Jackson mineral interests.

The Ticor Appellees accepted coverage of the May Appellants' claims; investigated; agreed to pay compensable losses under the May Appellants' respective title policies; and obtained an appraisal of the mineral interests at issue. This appraisal valued the mineral interests at $1,900 per net mineral acre. Based on this appraisal, the Ticor Appellees (1) notified the May Appellants that the compensable loss under the policies was based on $1,900 per net mineral acre; and (2) offered to pay compensable losses by prorating the $1,900 net mineral acre figure according to the size of each of the May Appellants' lots. The May Appellants disputed the Ticor Appellees' appraisal; they asked for compensation of $25,531.09 per net mineral acre plus $10,000 in attorneys' fees.

The May Appellants subsequently sued for breach of contract and breach of the common law duty of good faith and fair dealing in five separate proceedings. The trial court granted the Ticor Appellees' motion to consolidate and set March 1, 2010, as the trial date. When none of the parties appeared for trial on that date, the trial court dismissed the consolidated case for want of prosecution. The May Appellants filed an unopposed motion to reinstate the consolidated case, and the trial court granted the motion.

The trial court scheduled trial for July 26, 2010. The second scheduling order required parties seeking affirmative relief to designate their expert witnesses by June 4, 2010; all other parties had to designate expert witnesses by June 25, 2010. The trial court reset the trial date to October 18, 2010. The parties stipulated to the following facts, among others: (1) the names of the parties; (2) the acreage owned by each of the May Appellants; (3) the mineral interest reserved by Wynne/Jackson; and (4) the relevant valuation date for calculating the fair market value of bonuses and royalties.

Before the case was called for trial, the May Appellants submitted a motion

for continuance seeking to amend pleadings, supplement expert designations to add attorney Lahr as an expert witness, and pay the jury fee. The Ticor Appellees objected to the continuance. The trial court granted the May Appellants' motion for continuance to pay the jury fee; it further ruled that the deadlines in the agreed scheduling order would remain unless the parties submitted another agreed scheduling order. No subsequent agreed scheduling order was submitted to the trial court. The May Appellants paid the jury fee and requested that the case be reset to January 18, 2011, and the trial court granted the request.

The May Appellants, on November 29, 2010, filed a motion for leave to designate attorney Lahr as an expert witness on attorneys' fees. The May Appellants failed to obtain a ruling on this motion before the case was called to trial.

A jury was empanelled on January 18, 2011, and returned its verdict three days later. The jury answered "no" to a question asking whether the Ticor Appellees failed to comply with a common law duty of good faith and fair dealing owed to the May Appellants. The trial court did not submit a jury question asking whether the Ticor Appellees had breached their contractual obligations. The jury determined that as of July 1, 2008, the fair market value of the lease signing bonus per net mineral acre was $2,500; the fair market value of royalty per net mineral acre was $3,125. These amounts exceeded the Ticor Appellees' $1,900 valuation of the mineral interests at issue.

After trial, the May Appellants filed a supplemental motion for leave to designate attorney Lahr as an expert witness pursuant to Texas Rule of Civil Procedure 193.6. At a hearing on March 11, 2011, the trial court granted the May Appellants' motion, swore in Lahr as an expert witness, and allowed her to testify as an expert about attorneys' fees. The Ticor Appellees cross-examined Lahr at

5

the hearing.

At the same hearing, the trial court asked each party to submit case law supporting their position on whether the Ticor Appellees had breached their contracts with the May Appellants. According to the trial court's findings of fact, the trial court determined that the parties' stipulations established that the Ticor Appellees breached their contractual obligations.

The Ticor Appellees filed a motion to reconsider the March 11, 2011 ruling granting the May Appellants' motion for leave to designate Lahr as an expert witness. After a hearing, the trial court granted the Ticor Appellees' motion; it determined that no good cause existed for the May Appellants' failure to timely designate their attorney as an expert witness, and that granting such leave would cause prejudice and surprise to the Ticor Appellees. The May Appellants also filed an affidavit on June 10, 2011, giving notice to the court of the May Appellants' expert fees.

The trial court found the Ticor Appellees to be in breach of the title insurance policies and on March 6, 2011, signed a judgment in favor of the May Appellants awarding a total of $14,716.69.[3] The trial court assessed prejudgment interest at $2.02 per day from March 23, 2008, and assessed postjudgment interest at five percent per annum. The trial court's final judgment did not include an award of attorneys' fees.

The May Appellants requested findings of fact and conclusions of law with

---

[3] Under the judgment, the May Appellants are entitled to recover from the Ticor Appellees $2,500 per net mineral acre for lost bonus and $3,125 per net mineral acre for lost royalties for a total of $5,625 per net mineral acre. The May Appellants collectively hold 5.2326 mineral acres. Therefore, the $14,716.69 amount awarded in the final judgment represents the collective value of the one-half mineral interest lost by the May Appellants computed as $5,625 multiplied by 5.2326 and then divided by two.

6

respect to (1) attorneys' fees, and (2) expert fees pursuant to Texas Rule of Civil Procedure 296. The trial court signed findings of fact and conclusions of law.

The May Appellants filed a motion to modify the judgment and, alternatively, a motion for new trial, arguing that the trial court erred when it failed to award the May Appellants attorneys' fees and expert fees. The Ticor Appellees filed a motion for new trial, arguing that the trial court erred when it (1) found the Ticor Appellees to be in breach of contract based upon the parties' stipulations; (2) assessed court costs against the Ticor Appellees pursuant to Texas Rule of Civil Procedure 167; (3) assessed prejudgment interest against the Ticor Appellees; and (4) failed to award litigation costs to the Ticor Appellees pursuant to Texas Rule of Civil Procedure 167. The Ticor Appellees' motion for new trial was overruled by operation of law under Texas Rule of Civil Procedure 329b. Tex. R. Civ. P. 329b. The May Appellants filed a timely notice of appeal, and the Ticor Appellees filed a timely notice of cross-appeal. The case was transferred to this court from the Second Court of Appeals.[4]

## ANALYSIS

### I. The Ticor Appellees' Cross-Appeal

We address the Ticor Appellees' Cross-Appeal first because it raises threshold liability issues.

---

[4] The May Appellants initially appealed to the Second Court of Appeals in Fort Worth. Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the May Appellants' appeal to this court. *See* Tex. Gov't Code Ann. § 73.001 (Vernon 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and this Court on any relevant issue. *See* Tex. R. App. P. 41.3. This case originally was filed in the Second Court of Appeals of Texas as 02-12-0225-CV, and was transferred by an order of the Supreme Court of Texas issued June 18, 2012. *See* Misc. Docket No. 12-9107.

### A. Breach of Contract

The Ticor Appellees argue in their first issue that the trial court erred by signing a judgment against them awarding damages for breach of contract because (1) the May Appellants waived this claim under Texas Rule of Civil Procedure 279 when they failed to submit a question on breach of contract in the jury charge; (2) the parties never stipulated to a breach of contract or to damages; and (3) the verdict does not support a breach of contract finding.

We first address the Ticor Appellees' assertion that the May Appellants waived their breach of contract claim under Rule 279, which governs omissions from the jury charge

Rule 279 provides that any issues excluded from the jury charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. A claim is not waived under Rule 279 when the evidence conclusively establishes the necessary elements, even if none of the elements are submitted to the jury for consideration. *Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). When the evidence conclusively establishes a claim, it may be part of the judgment even if a jury question on the claim was not submitted. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 814-15 (Tex. 2005)).

The essential elements of breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of breach. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 665 (Tex. App.—Fort Worth 2010, no pet.). Determining whether a party has breached a contract is a question of law for the court rather than a question of fact for the jury when the facts of the parties' conduct are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887

8

(Tex. 2010) (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971)); *see also Orix Capital Mkts., L.L.C. v. Washington Mut. Bank*, 260 S.W.3d 620, 623 (Tex. App.—Dallas 2008, no pet.) ("Where the evidence is undisputed regarding a party's conduct under a contract, the judge alone must determine whether it shows performance or breach of its contract obligation.") (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied)).

The Ticor Appellees rely on *Southern Bell Telephone Co. v. DeLanney*, 809 S.W. 493, 495 (Tex. 1991), to support their waiver contention. In *Delanney*, the plaintiff alleged negligence and Deceptive Trade Practices Act violations based on a telephone company's failure to publish a Yellow Pages advertisement. *Id.* at 493. The jury found the telephone company liable for negligence, and the trial court assessed actual damages for past and future lost profits. *Id.* at 494. The court of appeals affirmed the judgment. *Id.* The supreme court reversed, reasoning the consumer's damages arose only from the telephone company's failure to publish the advertisement as required by contract, and that such failure is not a tort. *Id.* at 495. The court held the claim was based solely in contract; because the consumer did not allege breach of contract or request jury questions on the issue, the recovery awarded under the negligence claim was reversed and a take-nothing judgment was rendered. *Id.*

*Delanney* does not control here because the Ticor Appellees properly alleged and conclusively established breach of contract. According to the parties' written stipulations, the May Appellants were issued title insurance policies from the Ticor Appellees in connection with the purchase of their respective properties. In stipulation number 12, the parties agreed that the May Appellants timely filed notices of claims for loss of mineral interests with the Ticor Appellees under their respective policies. The parties agreed that the lost mineral interests were covered

9

under the title insurance policies.

The parties further agreed in stipulations number 13 and 14 that the Ticor Appellees (1) accepted coverage of the May Appellants' claims; (2) agreed to pay compensable losses under the May Appellants' respective title polices after an investigation; and (3) obtained an appraisal of the mineral interests putting the value of the mineral interests at issue at $1,900 per net mineral acre.

The parties agreed in stipulation number 16 that the May Appellants disagreed with the Ticor Appellees' assessment and valued the mineral interests at $25,531.09 per net mineral acre. It is undisputed that the Ticor Appellees failed to tender payment after the investigations and before trial.

In light of the stipulations, the only disputed issue for the jury to determine was the value of the mineral interests at issue. Once the jury did so, there were no further fact disputes to be decided with respect to the elements of a claim for breach of the title insurance policies. Therefore, we hold that the May Appellants were not required to submit a question to the jury asking whether the Ticor Appellees breached their contractual obligations. *See Cooper v. Cochran*, 288 S.W.3d 535-36 (Tex. App.—Dallas 2009, no pet.); *see also Legacy Motors, LLC v. Bonham*, No. 2-07-065-CV, 2007 WL 2693863, at *6 (Tex. App.—Fort Worth Sept. 13, 2007, no pet.) (mem. op.) ("[A] stipulation serves as proof on an issue that would otherwise be tried, is conclusive on the issue addressed, and estops the parties from claiming to the contrary.").

The Ticor Appellees additionally argue that the jury verdict does not support a judgment for breach of contract because the jury answered "No" to a question asking whether the Ticor Appellees failed to comply with their common law duty

of good faith and fair dealing.[5]  We reject this argument because breach of contract and breach of the duty of good faith and fair dealing are two distinct claims.

Texas law recognizes a common law duty of good faith and fair dealing in this first-party insurance context.  *Rice*, 325 S.W.3d at 672 (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).[6]  The duty arises from the special relationship that is created by the unequal bargaining power and the exclusive control that the insurer exercises over the processing of claims and the canceling of insurance contracts.  *Id.*

A common law claim for breach of the duty of good faith and fair dealing is separate from a claim for breach of the underlying insurance contract.  *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  The threshold of bad faith is reached only when the breach of contract is accompanied by an independent tort.  *Id.*  To prevail, the insured must prove that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact.  *Id.*

---

[5] The jury answered "No" to the following question:

Did DEFENDANT INSURANCE COMPANIES fail to comply with its duty of good faith and fair dealing to PLAINTIFF HOMEOWNERS?

An insurer fails to comply with its duty of good faith and fair dealing by —

Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear; or Refusing to pay a claim without conducting a reasonable investigation of the claim.

This submission conforms to the formatted wording set forth in the Texas Pattern Jury Charges. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment* PJC 103.1 (2012).

[6] Texas law no longer recognizes a common law duty of good faith and fair dealing in the workers' compensation context. *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex. 2012) (overruling *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988)).  In *Ruttiger*, the supreme court reasoned that the 1989 amendments to the Workers' Compensation Act "effectively eliminate[d] the need for a judicially imposed cause of action outside the administrative process and other remedies in the Act." *Id.*

11

Because breach of contract and breach of the duty of good faith and fair dealing are separate claims, we disagree with the Ticor Appellees' contention that the jury's failure to find a breach of the duty of good faith and fair dealing defeats a claim for breach of contract. *See id.* Accordingly, we overrule the Ticor Appellees' first issue raised on cross-appeal.

**B.     Court Costs**

In the Ticor Appellees' second issue, they argue that the trial court erred in assessing court costs against them because the May Appellants did not prevail on their claims; alternatively, they assert that neither party was wholly successful.

Texas Rule of Civil Procedure 131, the general rule governing recovery of costs, provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except when otherwise provided." Tex. R. Civ. P. 131. When determining whether court costs are appropriate, a court should consider the judgment rather than the verdict. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009). We review a trial court's allocation of costs under an abuse-of-discretion standard. *In re Estate of Frederick*, 311 S.W.3d 127, 130 n.6 (Tex. App.—Fort Worth 2010, no pet.).

The May Appellants successfully prosecuted their breach of contract claim and recovered damages on that claim. The court signed a judgment in favor of the May Appellants collectively for $14,716.69 and assessed pre- and postjudgment interest. The judgment supports an award of court costs under Rule 131 because the May Appellants prevailed on the breach of contract claim. *See Mag Instrument, Inc. v. G.T. Sales Inc.*, 294 S.W.3d 800, 808 (Tex. App.—Dallas 2009, pet. denied) ("[T]he prevailing party is typically the party who either successfully prosecutes the action or successfully defends against it, prevailing on the main issue."). Thus, the trial court did not abuse its discretion in awarding costs to the

May Appellants. We overrule the Ticor Appellees' second issue raised on cross-appeal.

## C.    Prejudgment Interest

The Ticor Appellees' argue in their third issue that the trial court erred in assessing prejudgment interest against them. To support this contention, the Ticor Appellees assert that "for the same reasons that costs of court should not be assessed against them, prejudgment interest should also not." For the reasons stated above, we overrule this contention. Alternatively, the Ticor Appellees challenge the court's use of March 23, 2008, as the beginning date from which prejudgment interest began to accrue. We agree with the Ticor Appellees' assertion that the trial court used the wrong date in calculating prejudgment interest.

Prejudgment interest is defined as "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 763 (Tex. App.—Fort Worth 2003, pet. denied). Prejudgment interest begins to accrue on the earlier of (1) 180 days after the defendant receives written notice of the claim, or (2) on the date the suit is filed. Tex. Fin. Code Ann. § 304.104 (Vernon 2006); *Town of Flower Mound*, 111 S.W.3d at 763 (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 532 (Tex. 1998)).[7]

The May Appellants filed suit on March 31, 2009. The Ticor Appellees first received written notice of a claim from the May Appellants on or about September

---

[7] We have no occasion to consider the application of Texas Finance Code § 304.105 because the parties have not addressed it in their appellate briefs. *See* Tex. Fin. Code Ann.§ 304.105 (Vernon 2006).

23, 2008. The May Appellants' claims were received by the Ticor Appellees at different times during the period of September 23, 2008 to January 21, 2009. However, we do not address the effect of the various dates of receipt because the May Appellants ask us to calculate prejudgment interest from the later date of March 31, 2009. Thus, the May Appellants are not arguing that prejudgment interest should start 180 days after September 23, 2008, which is about one week before the date the suit was filed. The trial court incorrectly assessed prejudgment interest starting from March 23, 2008, preceding both the date the suit was filed and 180 days after the date the May Appellants' last claim was submitted. *See* Tex. Fin. Code Ann. § 304.104. The May Appellants do not offer any argument in support of the trial court's use of the March 23, 2008 date. We conclude the judgment must be modified to reflect a beginning date of March 31, 2009 (the date of filing of the suit), for the accrual of prejudgment interest. We sustain the Ticor Appellees' third issue raised on cross-appeal.

### D.    Litigation Costs

The Ticor Appellees contend in their fourth issue that the trial court erred in failing to award them litigation costs as an offset to the judgment.

Texas Rule of Civil Procedure 167 governs the award of litigation costs against a party who rejects an offer made substantially in accordance with the rule. *See* Tex. R. Civ. P. 167.1. If a settlement offer is made and rejected and the judgment is significantly less favorable to the rejecting party than the settlement offer, then the offering party shall recover litigation costs from the rejecting party from the time the offer was rejected to the time of judgment. *See* Tex. R. Civ. P. 167.4.

A judgment is significantly less favorable to the rejecting party when: (1) the rejecting party is a claimant and the award will be less than 80 percent of the

rejected offer; or (2) the rejecting party is a defendant and the award will be more than 120 percent of the rejected offer. *Id.* In cases filed before September 1, 2011, any award of litigation costs may not exceed one-half of the economic damages to be awarded to the claimant in the judgment. *Id.*

Here, the Ticor Appellees attempted to settle all monetary claims for $26,250.[8] The trial court's judgment awarded $14,716.69 in actual damages. The Ticor Appellees contend that the trial court's judgment was less than 80 percent of the rejected offer. Thus, they contend that the trial court erred in failing to award the Ticor Appellees litigation costs as an offset to the judgment. The May Appellants argue that all damages awarded to them must be taken into account, including attorneys' fees and prejudgment interest.

Because the May Appellants are not entitled to attorneys' fees, as discussed below, such fees may not be included as part of the judgment awarded. *See id.* Further, even if prejudgment interest is included, the trial court's award is still less than 80 percent of the rejected offer. Thus, we agree with the Ticor Appellees that the trial court erred in failing to award litigation costs. *See id.* Because this case was filed before September 1, 2011, any award to the Ticor Appellees may not exceed one-half of the economic damages that were awarded to the May Appellants. *See* Tex. R. Civ. P. 167.4. We sustain the Ticor Appellees' fourth issue, and remand this issue to the trial court to determine the appropriate amount of litigation costs to award the Ticor Appellees.

We now turn to the May Appellants' issues on appeal.

---

[8] The May appellants do not dispute that this settlement offer was made in full compliance with Texas Rule of Civil Procedure 167.2. *See* Tex. R. Civ. P. 167.2.

## II. The May Appellants' Appeal

### A. Rule 193.6 Motion

In their first issue on appeal, the May Appellants argue that "the trial court erred in sanctioning [them] by denying [their] rule 193.6 motion for leave to designate attorney Lahr as an expert on attorney's fees." The May Appellants argue that the Ticor Appellees were not surprised or prejudiced by the late designation of Lahr because they had notice of the May Appellants' intention to seek attorneys' fees.

If a party fails to timely designate a witness, then testimony from that witness will be excluded unless the trial court determines that the party seeking to introduce the evidence establishes either (1) there was good cause for the failure; or (2) the failure to designate the witness will neither unfairly surprise nor unfairly prejudice the other parties. Tex. R. Civ. P. 193.6(a); *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

The burden of establishing good cause or lack of unfair surprise or unfair prejudice is on the party seeking to call the witness. Tex. R. Civ. P. 193.6(b). A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record. *Id.* A trial court's decision to exclude an expert who has not been properly designated to testify is reviewed for abuse of discretion. *Gillenwater*, 285 S.W.3d at 881.

The May Appellants contend that the Ticor Appellees were not unfairly surprised or unfairly prejudiced by their failure to timely designate Lahr.[9] Trial

---

[9] The May Appellants cite a number of cases in support of the argument that no unfair surprise or unfair prejudice occurred. *See City of El Paso v. Parsons*, 353 S.W.3d 215, 230 (Tex. App.—El Paso 2011, no pet.) (trial court acted within its discretion in finding no unfair surprise when it allowed the late designation of an expert witness but provided six additional weeks of discovery); *In re M.H.*, 319 S.W.3d 137, 147-48 (Tex. App.—Waco 2010, no pet.) (trial court

originally was scheduled for July 26, 2010. A second scheduling order was signed by counsel on April 30, 2010, and required the May Appellants to designate their expert witnesses by June 4, 2010. The court reset the trial date to October 18, 2010. The Ticor Appellees were notified that the May Appellants were seeking attorneys' fees on October 14, 2010, in a response letter to the Ticor Appellees' settlement offer. On October 18, 2010, the May Appellants submitted a motion for continuance to amend pleadings, designate Lahr as an expert witness, and pay the jury fee. The trial court granted the continuance. However, the trial court further ruled that the deadlines in the second Agreed Scheduling Order would stand.

On November 29, 2010, six months after the expert designation deadline and approximately six weeks before trial, the May Appellants filed a motion for leave to designate Lahr. The trial began on January 18, 2011, and the jury returned its verdict on January 21. The May Appellants' motion for leave was heard on March 11, 2011. The trial court found that the Ticor Appellees were neither surprised nor unfairly prejudiced by the May Appellants' late designation of Lahr and allowed her to testify. The Ticor Appellees filed their motion for reconsideration of the Ticor Appellees' objections to the May Appellants' motion for leave on May 2, 2011. The trial court reversed its March 11, 2011 ruling and granted the Ticor

---

acted within its discretion in finding no unfair surprise when expert witness was identified on the list of expert witnesses); *Llanes v. Davila*, 133 S.W.3d 635, 640 (Tex. App.—Corpus Christi 2003, pet. denied) (trial court acted within its discretion in finding no unfair surprise when party timely identified expert witness in response to requests for disclosure but failed to provide summary of mental impressions); *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no pet.) (trial court acted within its discretion in finding no unfair surprise when it allowed late designation of expert witness and granted a postponement of testimony to allow opposing party to depose the expert witness). These cases are distinguishable because they do not address circumstances in which a trial court excluded an expert when (1) the plaintiff failed to timely designate the expert pursuant to any agreed scheduling order; (2) the plaintiff failed to obtain a ruling on a motion for leave to designate an expert prior to commencement of trial; and (3) the defendant was denied the opportunity to depose the expert.

Appellees' motion for reconsideration without specifying its reasons for doing so.

The May Appellants failed to timely designate pursuant to multiple agreed scheduling orders filed with the trial court and failed to timely designate in response to discovery requests. The trial court acted within its discretion when it sanctioned the May Appellants by denying their rule 193.6 motion for leave to designate Lahr as an expert on attorneys' fees. *See Gillenwater*, 285 S.W.3d at 882 (trial court did not abuse discretion by striking expert's affidavit when nonmovant failed to timely designate the expert pursuant to scheduling order deadlines). We overrule the May Appellants' first issue.

## B. Attorneys' Fees

In their second issue, the May Appellants argue that the trial court erred in failing to award them attorneys' fees in light of Lahr's unrebutted testimony at a post-trial hearing. To support this contention, the May Appellants cite *Northwestern National County Mutual Insurance Co. v. Rodriquez*, 18 S.W.3d 718 (Tex. App.—San Antonio 2000, pet. denied).

In *Rodriquez*, the insured identified her attorney as one of the persons expected to testify about damages during discovery. *Id.* at 722. Because the insured timely identified her attorney, the court found good cause to admit the attorney's testimony on attorneys' fees as a fact witness despite the attorney not being specifically identified as an expert witness. *Id.*

*Rodriquez* is distinguishable because the May Appellants failed to timely identify Lahr as an expert witness, fact witness, or a person expected to testify at trial. Consequently, the May Appellants' argument that Lahr's testimony stands as factual testimony, despite having not been designated as an expert or fact witness, is unpersuasive. Accordingly, we overrule the May Appellants' second issue.

18

## C.    Expert Fees

In their third and final issue, the May Appellants challenge the trial court's failure to award expert fees as court costs.  The May Appellants first contend that expert fees are recoverable because "the parties stipulated expert's fees would be taxed as costs of court in favor of the prevailing party."  Alternatively, the May Appellants argue that expert fees are recoverable under the terms of the title insurance contracts.

Texas statutes and case law define which items the court may include as taxable costs.  *Hatfield v. Solomon*, 316 S.W.3d 50, 66-67 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except when otherwise provided."  Tex. R. Civ. P. 131.  "Costs" usually refers to fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules, for example filing and service fees.  *Hatfield*, 316 S.W.3d at 66.  Costs within the meaning of Rules 125 through 149 are those items in the clerk's bill of costs.  *Id.; see also* Tex. R. Civ. P. 125-49.  The allocation of costs is reviewed for abuse of discretion.  *Hatfield* 316 S.W.3d at 66-67.

Rule 141 provides that the trial court has discretion, for good cause stated on the record, to allocate costs otherwise than as provided by law or the Texas Rules of Civil Procedure.  *See* Tex. R. Civ. P. 141.  However, the power to allocate costs does not encompass the power to tax as costs items that are not allowed as taxable court costs.  *Hatfield*, 316 S.W.3d at 67; *Whitley v. King*, 581 S.W.2d 541, 544-45 (Tex. App.—Fort Worth 1979, no writ).  Generally, in Texas, expert fees are not recoverable as court costs.  *See Bundren v. Holly Oaks Townhomes Ass'n*, 347 S.W.3d 421 (Tex. App.—Dallas 2011, pet. denied); *Whitley*, 581 S.W.2d at 544.

The May Appellants rely on the following exchange to assert that they agreed by stipulation with the Ticor Appelles that expert fees would be awarded as court costs to the prevailing party. At the formal charge conference, the May Appellants' counsel stated, "We've also agreed to the extent Plaintiffs are entitled to recover expert fees, those fees will be taxed as a cost of court." The Ticor Appellees' counsel added, "And, additionally, on the — with respect to the application of expert witness fees as court costs, Plaintiff — I would ask that that would be determined for both parties, not just Plaintiffs, if applicable."

Because of the phrases "to the extent Plaintiffs are entitled to recover expert fees" and "if applicable," it is uncertain that the parties were agreeing to allow expert fees as court costs in this stipulation. Expert fees are not court costs, and this stipulation is insufficient to make expert fees collectable as court costs. *See Whitley*, 581 S.W.2d at 544 ("[R]egardless of any good cause shown, costs of experts are merely incidental expenses in preparation for trial and not recoverable.").

Second, the May Appellants argue that expert fees are awardable to them under the terms of the insurance contract. However, the May Appellants did not present proof of expert fees during the jury trial, and the jury made no findings in this regard. On this record, the trial court did not err in failing to award the May Appellants expert fees because the trial evidence did not support such a recovery. *See Hatfield*, 316 S.W.3d at 67 (trial court abused its discretion by awarding costs as damages under the contract because plaintiffs did not present any evidence at trial to prove these costs); *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W2d 622, 626-27 (Tex. App.—Dallas 1987, writ denied) (trial court erred in awarding non-taxable court costs under the parties' contract because the parties seeking these costs did not prove that they were entitled to recover them during the

jury trial and did not obtain a stipulation to try this issue separately). Accordingly, we overrule the May Appellants' third issue.

## CONCLUSION

Having sustained the Ticor Appellees' third and fourth issues on cross-appeal and having overruled the May Appellants' and the Ticor Appellees' remaining issues on appeal and cross-appeal, (1) we reverse the trial court's judgment as to prejudgment interest and remand this cause to the trial court to calculate prejudgment interest using March 31, 2009, as the accrual date; (2) we reverse the trial court's judgment with regard to litigation costs and remand this cause to the trial court to determine the appropriate amount of litigation costs to award the Ticor Appellees; and (3) we affirm the remainder of the trial court's judgment.


/s/     William J. Boyce
        Justice



Panel consists of Chief Justice Frost and Justices Boyce and Jamison.